United States District Court
Southern District of Texas
**ENTERED**
April 01, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HECTOR HUGO GARCIA, individually, and as next friend of L.L.G., a minor, and on behalf of the estate of ASHLEY KARIME GARCIA, | § § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-cv-00068 |
| | § | |
| CITY OF MCALLEN, TEXAS, and MICHAEL SOTO, in individual and official capacity, | § § § § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "Defendants Michael Soto's and Joel Villegas' Third Motion for Judgment on the Pleadings,"[1] "Defendant City of McAllen's Third Motion for Judgment Pursuant to Rule 12(c) and Third Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1),"[2] and "Plaintiffs' Response to Defendants' Third Motions for Judgment and Motion to Dismiss,"[3] which the Court notes is a response to both motions.[4] After considering the motions, record, and relevant authorities, the Court **GRANTS** Defendants' motions for judgment on the pleadings with respect to Plaintiffs' 42 U.S.C. § 1983 claims, **GRANTS** Defendant McAllen's motion to dismiss for lack of jurisdiction with respect to Plaintiffs' claims under the Texas Tort Claims Act, and **DENIES** Defendant McAllen's motion to dismiss for lack of jurisdiction with respect to Plaintiffs' Texas Public Information Act claim.

---

[1] Dkt. No. 32.
[2] Dkt. No. 33.
[3] Dkt. No. 39.
[4] *Id.* at 1 n.1.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is a civil rights lawsuit arising from a tragic "shootout" in McAllen, Texas, on January 28, 2017.[5] On the day of the incident, a seven-member family resided in a McAllen, Texas, home: Cruz Pinon, his wife Santos Verenice Garcia, and minors Ashley Karime Garcia, L.L.G., L.O.G., O.P., and L.P.[6] At approximately 11:53 p.m. on January 27, 2017, the City of McAllen dispatched City of McAllen police officers to respond to a domestic violence call at the family home.[7] The disturbance arose "between one or more of the three teenage daughters and their step-father Cruz Pinon when one or more of the daughters refused to allow Cruz Pinon to inspect a cell phone."[8] The McAllen police officers who responded were "A. Garza," "Michael Soto," and "Joel Villegas."[9] The police did not pat down or detain Cruz Pinon.[10] While police were interviewing Santos Verenice Garcia and L.O.G. outside the home, Cruz Pinon shot a handgun at Santos Verenice Garcia, L.O.G., and Ashley Karime Garcia.[11] The "shootout" then commenced, as police responded by discharging their own weapons.[12] Police did not hit Cruz Pinon, but struck L.L.G. inside the home.[13] Cruz Pinon fired seven rounds and struck Santos Verenice Garcia and Ashley Karime Garcia, then retreated to the back of the house where he

---

[5] Dkt. No. 31 at 4, ¶ 11. Facts are taken from the operative complaint and are assumed to be true. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

[6] Dkt. No. 31 at 8, ¶ 19.

[7] *Id.* at 9–10, ¶ 23.

[8] *Id.*

[9] *Id.* at 2, ¶¶ 3–6.

[10] *Id.* at 10–11, ¶¶ 27–28, 31.

[11] *Id.* at 13, ¶ 36. The Court takes judicial notice of its own docket. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (approving judicial notice). In an earlier version of Plaintiffs' complaint, originally filed in state court, Plaintiffs provide much greater factual detail of the "shootout." According to the allegations, Cruz Pinon stepped out of the front door, shot Santos Verenice Garcia, then closed the door. Dkt. No. 1-12 at 5, ¶ 15. Police officers then shot Ashley Karime Garcia on the front porch and fired through the closed front door and injured L.L.G. inside the house. *Id.* The allegations between the state complaint and the Third Amended Complaint in this Court are discrepant in that they change the actor who shot Ashley Karime Garcia (earlier, police, now, Cruz Pinon); nevertheless, the Court takes as true the allegations of the later pleading, the Third Amended Complaint.

[12] Dkt. No. 31 at 13, ¶ 37.

[13] *Id.*; *see also id.* at 14, ¶ 43 (discussing that L.L.G. must have been shot by police officers). *But see id.* at 23, ¶ 64 (stating that police "shot ASHLEY KARIME GARCIA and L.L.G.").

shot and killed himself.[14] Santos Verenice Garcia and Ashley Karime Garcia died of their wounds, but L.L.G. survived.[15]

Plaintiff Hector Hugo Garcia is the father of Ashley Karime Garcia and L.L.G.[16] Plaintiff attempted to investigate records of the shooting incident himself, but encountered resistance from City of McAllen officials.[17] Plaintiffs originally brought suit in the 206th Judicial District Court of Hidalgo County, Texas, on January 15, 2019.[18] Defendants removed to this Court on February 27, 2019.[19] After some proceedings, this Court ordered Plaintiffs to file a third amended complaint that properly names Defendants.[20] Plaintiffs timely filed the operative Third Amended Complaint.[21] Subsequently, at the initial pretrial and scheduling conference, the Court granted an oral motion to dismiss two police officer Defendants and now considers only the City of McAllen and Michael Soto to be Defendants in this case.[22]

Now before this Court, Plaintiffs bring claims for relief under 42 U.S.C. § 1983 and the Texas Tort Claims Act and request attorneys' fees.[23] Plaintiffs also request the Court issue a "writ of mandamus compelling DEFENDANT CITY OF MCALLEN, TEXAS to make information available for public inspection pursuant to section 552.321 of the Texas Open Records Act" and request associated attorneys' fees and costs.[24] Defendants have filed motions for dismissal and judgment on the pleadings which are now before the Court.[25]

---

[14] *Id.* at 14, ¶¶ 40–42.
[15] *Id.* at 16, ¶ 46 & 17, ¶ 50.
[16] *Id.* at 17, ¶ 51.
[17] *See id.* at 17–22, ¶¶ 52–62.
[18] Dkt. No. 1-2
[19] Dkt. No. 1.
[20] Dkt. No. 30 at 6.
[21] Mistakenly named a "First Amended Petition" in Plaintiffs' Third Amended Complaint. Dkt. No. 31 at 1.
[22] Minute Entry (Sept. 17, 2019).
[23] Dkt. No. 31 at 22–23, ¶¶ 63–64 & 27, ¶ 73.
[24] *Id.* at 27, ¶ 74.
[25] Dkt. Nos. 32–33.

## II. DISCUSSION

### a. Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings only "[a]fter the pleadings are closed." Defendant filed an answer in state court,[26] so a motion for judgment on the pleadings is ripe.[27] A Rule 12(c) motion is analyzed under the Rule 12(b)(6) standard.[28] "[T]he inquiry focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits."[29]

Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] The Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff, but will not strain to find inferences favorable to the plaintiff.[31] A plaintiff need not plead detailed factual allegations, but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[32] Courts first disregard any conclusory allegations as not entitled to the assumption of truth, and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[33] The standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is

---

[26] *See* Dkt. No. 1-8.
[27] *See Young v. City of Houston*, 599 F. App'x 553, 554 (5th Cir. 2015)
[28] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).
[29] *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[31] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[32] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).
[33] *Id.* at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

plausible, not to evaluate the plaintiff's likelihood of success."[34] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"[35] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible."[36] The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[37] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[38]

As to any questions of state law, this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[39] Absent a decision by Texas's highest tribunal, the decisions by Texas Courts of Appeals control "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[40]

Under Federal Rule of Civil Procedure 12(b)(1), "the district court 'has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

---

[34] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[35] *Iqbal*, 556 U.S. at 678.

[36] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[37] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[38] Fed. R. Civ. P. 12(d).

[39] *Exxon Co. U.S.A. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989) (quotation omitted); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

[40] *Exxon Co. U.S.A*, 889 F.2d at 675 (quoting *West*, 311 U.S. at 237).

facts.'"[41] The Court asks the same question: "whether the allegations state a claim sufficient to survive a motion to dismiss."[42]

### b. Analysis

#### 1. 42 U.S.C. § 1983 claims

Plaintiffs bring claims for relief under 42 U.S.C. § 1983 for violation of Ashley Karime Garcia's and L.L.G.'s rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.[43] Section 1983 authorizes a civil action for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."[44] Defendants seek dismissal of each claim.[45] The Court will analyze each claim.

#### i. Fourth Amendment Claim

"The Fourth Amendment protects against the unconstitutional seizure or arrest of persons, and use of force in any arrest."[46] "A 'Fourth Amendment seizure' occurs 'when there is a governmental termination of freedom of movement *through means intentionally applied.*'"[47] Accidental or unintentional applications of force do not constitute a "seizure" under the Fourth Amendment.[48] Even accidental shootings do not "vitiate the legal standard requiring an officer's behavior to be intentional as opposed to accidental."[49] Therefore, *Gorman v. Sharp* controls the

---

[41] *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)).

[42] *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quotation omitted).

[43] Dkt. No. 31 at 23, ¶ 64.

[44] 42 U.S.C. § 1983.

[45] Dkt. Nos. 32–33.

[46] Dkt. No. 32 at 13, ¶ 3.20; *see also* U.S. CONST. amend. IV.

[47] *Bryant v. Gillem*, No. 2:18-CV-122-BR, 2019 WL 5647058, at *7 (N.D. Tex. Oct. 31, 2019) (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989)) (emphasis in original).

[48] *See Brendlin v. California*, 551 U.S. 249, 254 (2007) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)) (holding there was "no seizure where a police officer accidentally struck and killed a motorcycle passenger during a high-speed pursuit").

[49] *Bryant*, 2019 WL 5647058, at *8 (citing *Watson v. Bryant*, 532 F. App'x 453, 458 (5th Cir. 2013)).

outcome in this Fourth Amendment analysis.[50] *Gorman* dealt with a firearms training exercise hosted by the Mississippi Gaming Commission wherein a firearms instructor forgot to replace his real firearm with a dummy training firearm and unintentionally shot a fellow firearms instructor in the chest with live ammunition.[51] In response to the victim's wife's claim of excessive force in violation of the Fourth Amendment, the Fifth Circuit held that the Fourth Amendment protects against only intentional or willful uses of force and held that liability was "foreclose[d] . . . under the Fourth Amendment in the absence of intentional conduct."[52]

With respect to L.L.G., Plaintiffs make clear that Defendant Soto did not *intend* to shoot L.L.G. and that L.L.G. was "ultimately" struck while Defendant Soto shot at his "intended target: Cruz Pinon."[53] Because Plaintiffs allege *unintentional* conduct, their excessive force claim under the Fourth Amendment cannot survive with respect to L.L.G.

With respect to Ashley Karime Garcia, Plaintiffs are unclear whether they are alleging that Defendant Soto shot Ashley Karime Garcia. In their statement of facts, Plaintiffs allege only that L.L.G. was shot by "DEFENDANT POLICE OFFICERS."[54] Plaintiffs' pleading is initially clear that Ashley Karime Garcia was shot only by Cruz Pinon.[55] Plaintiffs' "causes of action" then veer in a new direction and assert that "DEFENDANT POLICE OFFICERS shot ASHLEY KARIME GARCIA and L.L.G."[56] and that Defendants violated the rights of Ashley Karime Garcia and L.L.G.[57] Even assuming that "POLICE OFFICERS" shot Ashley Karime Garcia, Plaintiff pleads no facts alleging that such shooting was intentional. Given Plaintiffs' allegation

---

[50] 892 F.3d 172 (5th Cir. 2018).
[51] *Id.* at 174.
[52] *Id.* at 175.
[53] Dkt. No. 31 at 13, ¶ 37.
[54] Dkt. No. 31 at 4, ¶ 11 & 13, ¶ 37 & 14, ¶ 43 & 22, ¶ 61; *see also supra* note 11 (discussing the discrepancy).
[55] Dkt. No. 31 at 31, ¶ 36, & 14, ¶ 40.
[56] *Id.* at 23, ¶ 65.
[57] *Id.* ¶ 64, & 24, ¶ 66.

that "DEFENDANT POLICE OFFICERS" had the "intended target" of Cruz Pinon,[58] the Court

finds that any shooting of Ashley Karime Garcia was necessarily unintentional and cannot

survive for the same reasons as Plaintiffs' claim with respect to L.L.G.

Even if this Court is mistaken in its application of *Gorman v. Sharp* to this case or its

assessment of the intentionality of the shooting, the Court would still dismiss Plaintiffs' Fourth

Amendment claim. When evaluating the reasonableness of a police officer's use of force, the

Court looks to whether the "use of force was a reasonable response to the threat of harm that the

[situation] posed to himself and the public."[59] Even if a police officer's bullet strikes an innocent

bystander, the Court's analysis is still directed to the threat of harm.[60] "To establish a violation of

the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that

(2) resulted directly and only from the use of force that was excessive to the need, and (3) the use

of force [ ] was objectively unreasonable."[61] Although the individual right to be free from

excessive force is clearly established, what constitutes "excessive force" is fact-dependent and

based on the totality of circumstances.[62] The standard is objective reasonableness "in light of the

facts and circumstances confronting [law enforcement officers], without regard to their

underlying intent or motivation,"[63] and with due regard for the necessity for officers to make

split-second judgments and commit some necessary mistakes.[64] There is no easily applied legal

test, and the Supreme Court has instructed courts to "slosh our way through the factbound

morass of 'reasonableness.'"[65] Nevertheless, at this stage of proceedings, the legal standard of

---

[58] *Id.* at 13, ¶ 37.
[59] *Lytle v. Bexar Cty.*, 560 F.3d 404, 412 (5th Cir. 2009).
[60] *See id.* (using this analysis in a case alleging a Fourth Amendment excessive force violation when the officer shot at the driver of a vehicle and struck an innocent bystander in the back seat).
[61] *Mathews v. Davidson*, 674 F. App'x 394, 395 (5th Cir. 2017) (alteration in original).
[62] *Bone v. Dunnaway*, 657 F. App'x 258, 262 (5th Cir. 2016).
[63] *Graham v. Connor*, 490 U.S. 386, 397 (1989).
[64] *City & Cty. of San Francisco. v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).
[65] *Scott v. Harris*, 550 U.S. 372, 383 (2007).

Federal Rule of Civil Procedure 12(c) governs and whether Plaintiffs' claims survive is a question of law; not one of factfinding for a jury.[66]

Here, Cruz Pinon placed "police officers and innocent bystanders alike at great risk of serious injury."[67] Cruz Pinon "fired seven rounds" which struck two people and retreated to the back of the house "before the DEFENDANT POLICE OFFICERS entered the house."[68] Police officers reacted to Cruz Pinon by firing fourteen rounds.[69] In the Court's "judicial experience and common sense,"[70] no reasonable jury could find that the police officers' use of force in firing their service weapons to defend against and subdue an active shooter was objectively unreasonable. Indeed, the societal need and objective reasonableness for police officers to fire their weapons is at its zenith in response to an active shooter.[71] Accordingly, the Court **GRANTS** judgment on the pleadings in favor of Defendants with respect to all of Plaintiffs' claims for excessive force in violation of the Fourth Amendment to the United States Constitution.

### ii.  Fifth Amendment Claim

Plaintiffs claim that "DEFENDANTS punished PLAINTIFFS without due process, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution."[72] However, in response to Defendants' motions for judgment on the pleadings with respect to this particular claim under the Fifth Amendment,[73] Plaintiffs make no attempt to address or defend their Fifth

---

[66] *See id.* at 381 n.8.
[67] *Id.* at 380.
[68] Dkt. No. 31 at 14, ¶¶ 40–41.
[69] *Id.* at 13, ¶ 37.
[70] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[71] *See Scott v. Harris*, 550 U.S. 372, 383 (2007) (describing the "paramount governmental interest in ensuring public safety.").
[72] Dkt. No. 31 at 23, ¶ 64.
[73] Dkt. Nos. 32 at 10–11 & 33 at 10.

Amendment claim.[74] Plaintiffs offer no legal argument to support their Fifth Amendment claim and the Court is under no duty to discovery any.[75] The Court interprets Plaintiffs' silence as assent to dismissal of their Fifth Amendment claim.[76] Furthermore, the Due Process Clauses in the Fifth and Fourteenth Amendments have essentially similar thrusts,[77] so Plaintiffs' claim for violation of constitutional due process is further analyzed below. The Court **GRANTS** judgment on the pleadings in favor of Defendants with respect to all of Plaintiffs' claims for violation of the Fifth Amendment to the United States Constitution.

### iii. Eighth Amendment Claim

This claim is easily dismissed. Plaintiffs claim that Defendants inflicted "cruel and unusual" punishments upon Plaintiffs "in violation of the Eighth Amendment of the U.S. Constitution."[78] But the "protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners."[79] Because Plaintiffs never plead that Ashley Karime Garcia or L.L.G. are convicted prisoners, the Court **GRANTS** judgment on the pleadings in favor of Defendants with respect to all of Plaintiffs' claims for violation of the Eighth Amendment to the United States Constitution.

---

[74] See Dkt. No. 39 at 13–14, ¶¶ 5.1–5.3.
[75] United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").
[76] LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition."); see also In re FM Forrest, Inc., 587 B.R. 891, 933 (Bankr. S.D. Tex. 2018) (collecting cases holding that failure to cite any law or develop an argument on a point waives that particular argument).
[77] See Adamson v. People of State of California, 332 U.S. 46, 66 (1947) (Frankfurter, J., concurring).
[78] Dkt. No. 31 at 23, ¶ 64.
[79] Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996); see also Carlton v. Fearneyhough, No. 07-10676, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008) (affirming district court's holding that the Eighth Amendment applies only to convicted prisoners and is inapplicable to claims of excessive force applied to non-prisoners).

### iv.  Fourteenth Amendment Claim

Plaintiffs claim a violation of due process guaranteed by the Fourteenth Amendment.[80] However, the United States Supreme Court has confirmed that excessive force claims cannot be brought under the Fourteenth Amendment Due Process Clause, and must instead be brought under the Fourth Amendment, which provides the "explicit textual source of constitutional protection" against excessive force by government actors.[81] The Supreme Court grounded its ruling in *Tennessee v. Garner*, in which officers used deadly force and the plaintiff brought an excessive force claim under the Fourth and Fourteenth Amendments among other claims.[82] The *Garner* Court refused to analyze the plaintiff's claims under the Fourteenth Amendment, and the Supreme Court later made "explicit what was implicit in *Garner*'s analysis" and clarified that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . rather than under a 'substantive due process' approach."[83] In response, Plaintiffs only assert that their claims are properly brought under the Fourteenth Amendment without citation to supporting authority.[84] The Court is unpersuaded. Accordingly, the Court **GRANTS** judgment on the pleadings in favor of Defendants with respect to all of Plaintiffs' claims for violation of the Fourteenth Amendment to the United States Constitution.

### v.  Claim against Defendant McAllen for Unconstitutional Policy or Custom

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

---

[80] Dkt. No. 31 at 23, ¶ 64.
[81] *Graham v. Connor*, 490 U.S. 386, 395 (1989).
[82] *Tennessee v. Garner*, 471 U.S. 1, 5 (1985).
[83] *Graham*, 490 U.S. at 395.
[84] Dkt. No. 39 at 13, ¶ 5.1 & 19, ¶ 6.4.

promulgated by that body's officers."[85] Plaintiffs allege that the "shootout" "demonstrates a practice, custom, and policy of DEFENDANT CITY OF MCALLEN, TEXAS to condone and encourage its police officers to use gratuitous excessive force and that DEFENDANT CITY OF MCALLEN, TEXAS would then [sic] cover it up later."[86] Defendant urges various reasons to reject this claim, including that Plaintiffs fail to allege facts describing an unconstitutional policy or custom, and that Plaintiffs cannot state a claim for policy liability.[87] Plaintiffs assert that their complaint sufficiently alleges an unconstitutional policy of the city to fail to properly train its police officers in the constitutional limitations on the use of deadly force.[88]

In order to establish an unconstitutional policy or custom, there must be "an underlying constitutional violation."[89] As detailed above, the Court finds that Plaintiffs' claims for all underlying constitutional violations must be dismissed with prejudice as Plaintiffs have failed to state a claim for any constitutional violation. Accordingly, Plaintiffs' unconstitutional policy or custom claim against Defendant McAllen cannot survive.

Even if an underlying constitutional violation was pled, Plaintiffs have not alleged enough facts to state a claim under § 1983. "[T]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[90] "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[91] The third type are "[a] persistent, widespread practice of city officials or employees, which, although not

---

[85] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).
[86] Dkt. No. 31 at 24, ¶ 67.
[87] Dkt. No. 33 at 14–18, ¶¶ 5.12–5.21.
[88] Dkt. No. 39 at 15–16, ¶¶ 5.4–5.7.
[89] *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quotation omitted).
[90] *Id.* (quotation omitted).
[91] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[92] This Court has determined that plaintiffs need not allege "specific details regarding the existence or absence of internal policies or training procedures prior to discovery" and may generally allege minimal facts such as prior violations by the police agency, "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy" to survive a motion to dismiss.[93]

The only allegation that Plaintiffs point to is that the mere fact of the "shootout" "demonstrates a practice, custom, and policy of DEFENDANT CITY OF MCALLEN, TEXAS to condone and encourage its police officers to use gratuitous excessive force."[94] But as detailed above, the Court does not find responding to an active shooter by firing service weapons in an attempt to interdict the threat[95] to be "gratuitous excessive force." Even if such conduct was excessive force, the specific instance says little about the policy of Defendant McAllen—indeed, Plaintiffs allege that not all the officers reacted in the same way[96]—so Plaintiffs fail to allege prior violations, past incidents of misconduct, multiple harms, open misconduct, misconduct committed by multiple officers, or any specific deficient policy topic. Plaintiffs do not allege the minimal facts necessary to survive a motion for judgment on the pleadings.

Plaintiffs also allege that Defendant McAllen failed to properly train officers on the use of force and that Defendant McAllen thereby evinced a "deliberate indifference" to constitutional

---

[92] *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984).
[93] *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842–44 (S.D. Tex. 2011) (Ellison, J.) (footnotes omitted).
[94] Dkt. Nos. 31 at 24, ¶ 67, & 39 at 16, ¶ 5.6.
[95] Dkt. No. 31 at 13, ¶ 37 (explaining that police officers intended to shoot Cruz Pinon).
[96] *Id.* ¶ 38 ("Some of the Police Officers present chose not to fire at Cruz Pinon for risk of striking innocent bystanders.").

limitations on the use of force which manifested in its officers' "reckless disregard for human life" by firing in the direction of innocent bystanders.[97] However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[98] "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."[99] First, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."[100] Second, it will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. . . . [A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."[101] In sum, here, Plaintiffs do not allege specifically how the police officer training is defective or identify specifically what training was lacking that would have trained officers against committing the conduct at issue.[102] Plaintiffs fail to allege the minimal facts that would enable the Court to draw the reasonable inference that Defendant McAllen's training or policies are defective. Even if there was underlying unconstitutional conduct committed by city police officers, Plaintiffs' § 1983 claim against Defendant McAllen would fail. Accordingly, the Court **GRANTS** judgment on the pleadings in favor of Defendant McAllen with respect to Plaintiffs' § 1983 claim.

---

[97] Dkt. No. 31 at 9, ¶ 22, & 13, ¶ 38 & n.15, & 25, ¶ 68.
[98] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
[99] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).
[100] *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989).
[101] *Id.* at 391.
[102] *See Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (affirming dismissal of the conclusory allegation that it was "apparent from the facts of this case" that the city's training was inadequate).

2.  *Texas Tort Claims Act claim against Defendant City of McAllen*

The Court now turns to Plaintiffs' state claims. Plaintiffs bring claims under the Texas

Tort Claims Act against both Defendants.[103] Plaintiffs' claims against Defendant Soto in his

official capacity are effectively claims against Defendant McAllen.[104] Arms and agencies of the

State, such as cities and municipalities, are "not liable for torts of its officers or agents in the

absence of a constitutional or statutory provision therefor."[105] Plaintiffs point to three sections of

the Texas Civil Practice and Remedies Code that they assert waive governmental immunity.[106]

Section 101.021 provides: "A governmental unit in the state is liable for personal injury and

death so caused by a condition or use of tangible personal or real property if the governmental

unit would, were it a private person, be liable to the claimant according to Texas law."[107] Section

101.0215 provides: "A municipality is liable under this chapter for damages arising from its

governmental functions . . . including but not limited to: police and fire protection and

control."[108] Section 101.025 provides:

> (a) Sovereign immunity to suit is waived and abolished to the extent of liability
> created by this chapter.
> (b) A person having a claim under this chapter may sue a governmental unit for
> damages allowed by this chapter.[109]

Defendant McAllen admits that its "immunity is waived . . . in those limited situations as

provided by the legislature," but asserts that "[n]one of the Plaintiffs' claims fall within the

limited waiver of the City of McAllen's governmental immunity under the Texas Tort Claims

---

[103] Dkt. No. 31 at 22–23, ¶ 63.
[104] *Griffith v. Collision Clinic, L.L.C. (In re Griffith)*, 485 S.W.3d 529, 534 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[A] suit against a government officer in his official capacity is effectively a suit against the entity of which the official is an agent, and he has the same immunity enjoyed by the entity unless he has acted *ultra vires*.")
[105] *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976).
[106] Dkt. No. 31 at 3, ¶ 10.
[107] Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2020).
[108] *Id.* § 101.0215(a)(1).
[109] *Id.* § 101.025.

Act."[110] The lynchpin of Defendant McAllen's argument is that it is immune under the statute from any claim of intentional tort under § 101.057(2), which provides, "[t]his chapter does not apply to a claim arising out of assault, battery, false imprisonment, or any other intentional tort . . . ,"[111] and that Plaintiffs' attempt to plead a cause of action for negligence against Defendants is, in reality, an artfully pled claim of an intentional tort and so must be dismissed.[112] Plaintiffs respond that the city police officers intended to shoot Cruz Pinon, not Ashley Karime Garcia or L.L.G., so the nature of Plaintiffs' claim sounds in negligence.[113]

The Court recognizes two distinct lines of cases that could govern the outcome in this case. Two Supreme Court of Texas cases, *State Farm Fire & Casualty Co. v. S.S.*[114] and *Tanner v. Nationwide Mutual Fire Insurance Co.*,[115] illuminate the distinction between intentional and negligent conduct and delineate when conduct is negligent. In *S.S.*, the individual S.S. contracted genital herpes after having consensual sexual intercourse with G.W. at his home.[116] After S.S. sued G.W. for her injuries and the parties informed G.W.'s insurer, State Farm, that G.W. planned to bring claims against State Farm, State Farm brought a declaratory judgment action against G.W. seeking a declaration that "S.S.' claims in the underlying suit fell within the intentional injury exclusion provision in the policy and thus no coverage exists under the policy."[117] The insurance policy did not apply "to bodily injury or property damage caused intentionally by or at the direction of [G.W.]."[118] The court found that "[a]lthough it is

---

[110] Dkt. No. 33 at 25–26, ¶¶ 5.29–5.30.
[111] TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2).
[112] Dkt. No. 33 at 26–31, ¶¶ 5.31–5.41; *see City of Waco v. Williams*, 209 S.W.3d 216, 222 (Tex. App.—Waco 2006, no pet.) ("A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." (quotation omitted)).
[113] Dkt. No. 39 at 12, ¶¶ 4.1–4.3; *see also id.* at 9, ¶ 2.23.
[114] 858 S.W.2d 374 (Tex. 1993).
[115] 289 S.W.3d 828 (Tex. 2009).
[116] 858 S.W.2d at 375.
[117] *Id.* at 376.
[118] *Id.* at 377.

undisputed that G.W. intentionally engaged in sexual intercourse without informing S.S. of his condition, the summary judgment evidence in this case does not indicate that G.W. acted with intent to cause S.S. bodily injury."[119] The court majority rejected the dissent's arguments that "because G.W.'s acts were intentional, the resulting injury was also intentional."[120] Although decided at a different procedural stage, the case stands for the proposition that intentional acts resulting in unintentional injuries may be said not to have intended the injury.

Tanner reaffirmed this interpretation. In Tanner, a motorist attempted to elude police.[121] While attempting escape, the motorist crashed into a vehicle in an intersection with the right-of way and injured a family.[122] The family sued the motorist and obtained default judgment, but the motorist's vehicle insurer "refused to pay damages and filed [a] declaratory-judgment action, arguing the intentional-injury exclusion barred coverage for the [family's] claims."[123] The Supreme Court of Texas acknowledged that when a person is "substantially certain" that a particular result or injury will redound from his or her conduct, the person can be said to have acted intentionally, but the motorist's "reckless" attempt to elude police "did not establish as a matter of law that the [family's] injuries were 'caused intentionally' under the [policy] exclusion."[124] The Supreme Court of Texas adopted a treatise's formulation of intent:

> [T]he mere knowledge and appreciation of a risk—something short of substantial certainly—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a

---

[119] *Id.* at 378.
[120] *Id.* at 378 n.4.
[121] *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009).
[122] *Id.*
[123] *Id.*
[124] *Id.* at 832–33.

reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.[125]

In fact, the passage quoted above goes on to describe a situation more akin to this case: "The actor who fires a bullet into a dense crowd may fervently pray that the bullet will hit no one, but if the actor knows that it is unavoidable that the bullet will hit someone, the actor intends that consequence."[126]

This latter conception of intent is further illuminated by the second line of cases. "An intentional tort requires a specific intent to inflict injury, but an actor need not intend the specific injury complained of for an intentional tort to be committed."[127] Texas courts have made clear that plaintiffs cannot "circumvent the intentional tort exception to waiver of municipal liability by simply pleading negligence, when the shooting event on which they based their claim was actually an intentional tort."[128] For example, when a plaintiff's Texas Tort Claims Act claims against a law enforcement agency arose from an officer's "clearly intentional" conduct such as aiming a gun at the plaintiff, blocking her in with his cruiser, and firing at her tires, the agency was entitled to sovereign immunity against the plaintiff's negligent training and supervision claims.[129] Similarly, a plaintiff who was tasered, fell, and injured her face and teeth cannot maintain negligence claims against a city when the alleged breach of the standard of care "is inextricably intertwined with the intentional tort" of firing a taser at someone and caselaw forecloses any "effort to bifurcate those two actions."[130] In short, "[t]he fundamental difference between a negligence injury and an intentional injury is the specific intent to inflict injury,"[131]

---

[125] *Id.* at 832 n.20 (quotation omitted).
[126] W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 8, at 35 (5th ed. 1984).
[127] *City of Waco v. Williams*, 209 S.W.3d 216, 224 (Tex. App.—Waco 2006, no pet.).
[128] *Durbin v. City of Winnsboro*, 135 S.W.3d 317, 324 (Tex. App.—Texarkana 2004, no pet.).
[129] *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).
[130] *Peña v. City of Rio Grande City*, 879 F.3d 613, 625 (5th Cir. 2018).
[131] *Durbin*, 135 S.W.3d at 322 (alteration in original) (quotation omitted).

and where a claim arises out of an officer's *intention* to effectuate an arrest or cause injury, a

claim under the Texas Tort Claims Act cannot survive.[132]

Thus, the two lines of cases may be summarized as follows: under the latter or *Durbin*

line of cases,[133] where an officer *intends* to inflict some injury or apply some force (to effectuate

an arrest, stop a chase, defend against a hostile threat, etc.) and an unintentional injury results,

claims against that officer will always sound in intentional tort, but under the former or *S.S.* line

of cases,[134] where an officer *does not intend* to inflict any injury and unintentional injury

nevertheless results, claims against that officer will always sound in negligence—unless it can be

shown that the officer was substantially certain that the injury would result—for purposes of

determining sovereign immunity under § 101.057(2) of the Texas Tort Claims Act.[135]

The Court finds that the *Durbin* line of cases controls here. Plaintiffs' claim sounds in

intentional tort because the police officers "intended" to shoot Cruz Pinon and unintentional

injury resulted.[136] This conclusion is supported by the Texas Court of Civil Appeals' holding:

> If one person intentionally strikes at, throws at, or shoots at another, and
> unintentionally strikes a third person, he is not excused, on the ground that it was
> a mere accident, but it is an assault and battery of the third person. Defendant's
> intention, in such a case, is to strike an unlawful blow, to injure some person by
> his act, and it is not essential that the injury be to the one intended.[137]

In short, "[t]he intention follows the bullet."[138] Because the "negligence claim arises from the

same facts that form the basis of the intentional-tort claim,"[139] Defendant McAllen and

Defendant Soto in his official capacity are both entitled to sovereign immunity because "a suit

---

[132] *See Williams*, 209 S.W.3d at 221–22 (collecting cases).

[133] *See Durbin*, 135 S.W.3d at 324.

[134] *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374 (Tex. 1993).

[135] Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2020).

[136] Dkt. No. 31 at 13, ¶ 37.

[137] *Morrow v. Flores*, 225 S.W.2d 621, 624 (Tex. Civ. App.—Fort Worth 1949, writ ref'd n.r.e.) (quotation omitted).

[138] W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 8, at 37 (5th ed. 1984) (quoting *Missouri v. Batson*, 96 S.W.2d 384, 389 (Mo. 1936)).

[139] *Quinn v. Guerrero*, 863 F.3d 353, 364 (5th Cir. 2017).

against a government officer in his official capacity is effectively a suit against the entity of which the official is an agent."[140] The Court holds that § 101.057(2) requires that the Court **GRANT** judgment on the pleadings in favor of Defendant McAllen and Defendant Soto in his official capacity with respect to Plaintiffs' claims under the Texas Tort Claims Act.

### 3. *Texas Tort Claims Act claim against Defendant Soto in his individual capacity*

Plaintiffs bring a claim under the Texas Tort Claims Act against Defendant Soto in his individual capacity pursuant to "Chapter 101 of the Texas Civil Practice and Remedies Code."[141] Defendant McAllen moves to dismiss Plaintiffs' claims against Defendant Soto in his individual capacity with prejudice for lack of jurisdiction under § 101.106 of that chapter and Federal Rule of Civil Procedure 12(b)(1).[142]

The Texas Tort Claims Act does not permit a suit to proceed against both a governmental unit and an employee of that governmental unit. The purpose of § 101.106 is to force plaintiffs to cautiously determine at the outset of the case whether to sue the government *or* the employee individually "[b]ecause the decision regarding whom to sue has irrevocable consequences" under the effect of § 101.106(a)–(b).[143] Those subsections (a) and (b) provide that the choice to sue either the governmental unit or the employee "constitutes an irrevocable election by the plaintiff" and such election bars any suit or recovery against the defendant that the plaintiff did not elect to sue.[144] If a plaintiff improperly sues both a governmental unit and its employee, the governmental unit may move to dismiss the employee.[145] If a plaintiff is uncertain about whether to sue the governmental unit or the employee—a decision that turns on whether an employee was

---

[140] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2); *Griffith v. Collision Clinic, L.L.C. (In re Griffith)*, 485 S.W.3d 529, 534 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

[141] Dkt. No. 31 at 22, ¶ 63.

[142] Dkt. No. 33 at 3, ¶ 2.02.

[143] *Molina v. Alvarado*, 463 S.W.3d 867, 871 (Tex. 2015).

[144] TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.106(a)–(b) (West 2020).

[145] TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e).

acting within the scope of employment—"the prudent choice" is to sue the employee "and await a factual resolution of that question," because § 101.106(f) entitles a plaintiff to amend pleadings to sue the governmental unit if an employee was acting within the scope of employment.[146] But when a plaintiff sues the governmental unit only or both the governmental unit and its employee, the plaintiff "essentially [chooses] his  defendant before being required to do so by the election-of-remedies provision," but the choice is "still an irrevocable election under section 101.106, and the TTCA bars [plaintiffs] from later filing suit against [the individual employee]."[147]

Here, Plaintiffs elected to sue both the governmental unit *and* the employee. The governmental unit, Defendant McAllen, has moved under § 101.106(e) to dismiss the employee, Defendant Soto.[148] To avoid dismissal, Plaintiffs respond only that, "[a] reasonable jury could easily conclude that these actions resulted from recklessness rather than Defendants' claim of intentional tort."[149] However, § 101.106(e) applies to "virtually any state common law tort claim against both a governmental unit and its employees," including intentional and negligence torts.[150] Irrespective of the nature of the tort, § 101.106 commands dismissal of any tort claim under the Texas Tort Claims Act,[151] when it regards the same subject matter and arises out of the same actions and occurrences that gave rise to the claims against the governmental unit.[152] Plaintiffs point to no allegations that would support a tort claim independent of the "shootout" that gave rise to this action and the Court has discovered none.[153] Accordingly, the Court

---

[146] *Molina*, 463 S.W.3d at 871.

[147] *Id.*

[148] Dkt. No. 10 at 19, ¶¶ 5.20–5.21; Dkt. No. 33 at 24, ¶¶ 5.27–5.28.

[149] Dkt. No. 39 at 17, ¶ 5.11.

[150] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008).

[151] *See Garcia*, 253 S.W.3d at 658–59.

[152] *Travis v. City of Grand Prairie*, 654 F. App'x 161, 166 (5th Cir. 2016) (quoting *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 344 (Tex. 1998)).

[153] *See* Dkt. Nos. 31 & 39 at 17, ¶ 5.11. An employee or official acting within the scope of employment cannot be held personally liable in a tort action. *See Bates v. Dall. Indep. Sch. Dist.*, 952 S.W.2d 543, 551 (Tex. App.—Dallas

**GRANTS** Defendant McAllen's motion to dismiss for lack of jurisdiction and **DISMISSES WITH PREJUDICE** all of Plaintiffs' claims against Defendant Soto.

### 4. Public Information Act claim

Plaintiffs also seek mandamus relief, claiming that, despite numerous requests made under the Texas Public Information Act,[154] Defendant McAllen has thwarted and denied the requests for information.[155] Defendant McAllen moves for judgment on the pleadings on the grounds that, throughout Plaintiffs' complaint, Plaintiffs refer to "information provided by Defendant to Plaintiffs in response to their requests under the Public Information Act" and that Plaintiffs' claim is now moot and nonjusticiable.[156] In response, Plaintiffs argue that information specifically requested in their Texas Public Information Act requests, and required by a decision of the Texas Attorney General, still has not been provided.[157] Specifically, Plaintiffs allege that Defendants have withheld dashcam footage of the shooting incident,[158] ballistics reports,[159] incident reports, police reports, investigation reports, and witness statements regarding the shooting incident,[160] and basic information such as the "names of investigating officers, the offense committed and a detailed description of the offense."[161] Taking Plaintiffs' allegations as true,[162] Plaintiffs allege a nonmoot controversy regarding Defendant McAllen's failure to comply with the Texas Public Information Act and the decision of the Attorney General of Texas.[163]

---

1997, writ denied) (citing *Stimpson v. Plano Indep. Sch. Dist.*, 743 S.W.2d 944, 947 (Tex. App.—Dallas 1987, writ denied)); *see also Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 459 (Tex. App.—Fort Worth 2002, no pet.) ("The doctrine of sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent the State's consent to be sued.").

[154] TEX. GOV'T CODE ANN. §§ 552.001–.376 (West 2020).
[155] Dkt. No. 31 at 18–21, ¶¶ 53–59.
[156] Dkt. No. 33 at 32, ¶¶ 5.42–5.43.
[157] Dkt. No. 39 at 5–10, ¶¶ 2.2–2.24.
[158] *Id.* at 8, ¶ 2.21.
[159] Dkt. No. 31 at 5, ¶ 15.
[160] Dkt. No. 39 at 7, ¶ 2.10 & 8, ¶ 2.22.
[161] Dkt. No. 31 at 19, ¶ 54.
[162] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[163] *See* Dkt. No. 7-2.

Accordingly, Defendant McAllen's motion for judgment on the pleadings with respect to Plaintiffs' Public Information Act claim is **DENIED**.

Plaintiffs also seek costs of litigation and reasonable attorneys' fees pursuant to § 552.323 of the Texas Public Information Act.[164] Under that section, "the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails" in an action to compel the governmental body to disclose information.[165] The Court will defer its determination as to whether Plaintiffs have substantially prevailed on their Public Information Act claim until the Court's judgment on the merits.

### III. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to Plaintiffs' 42 U.S.C. § 1983 claims. The Court **GRANTS** Defendant McAllen's motion to dismiss for lack of jurisdiction with respect to Plaintiffs' Texas Tort Claims Act claims and **DISMISSES WITH PREJUDICE** all of Plaintiffs' Texas Tort Claims Act claims against Defendant Soto in his individual and official capacities. The Court **DENIES** Defendant McAllen's motion for judgment on the pleadings with respect to Plaintiffs' Texas Public Information Act claims. The Court **DENIES AS MOOT** Plaintiffs' request under 42 U.S.C. § 1988 for attorneys' fees and costs. Defendant Soto is **DISMISSED** from this action in his individual and official capacities. Only Plaintiffs' claims under the Texas Public Information Act against Defendant City of McAllen remain.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 1st day of April 2020.

_____
Micaela Alvarez
United States District Judge

---

[164] Dkt. No. 31 at 27, ¶ 74.
[165] TEX. GOV'T CODE ANN. § 552.323(a) (West 2020).